

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7020 | **DATE** | AUG 3 0 2001 |
| **CASE TITLE** | Stokes v. World Savings Bank | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, World Savings Bank's motion to dismiss Stokes's amended complaint [Doc. 15-1] is granted. This case is closed. Any and all pending motions are terminated.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | AUG 31 2001 date docketed | 28 |
| X | Docketing to mail notices. | | |
| X | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| dc(lc) | courtroom deputy's initials | FILED FOR DOCKETING 01 AUG 30 PM 3: 32 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

SHIRLEY STOKES, et al, )
)
      Plaintiffs, )
)
     v. ) No. 00 C 7020
)
       ) HONORABLE DAVID H. COAR
WORLD SAVINGS BANK, )
)
      Defendant. )

DOCKETED
AUG 3 1 2001

## MEMORANDUM OPINION AND ORDER

Shirley Stokes ("Stokes") brings an action against World Savings Bank ("WSB") for alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and Federal Reserve Board Regulation Z ("Regulation Z"), 12 C.F.R. § 225, in connection with a loan transaction for residential real estate purchase. Before this court is the defendant's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, WSB's motion is granted.

### I. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests whether the plaintiff has properly stated a claim for which relief may be granted, not whether the plaintiff will prevail on the merits. Pickrel v. City of Springfield, Ill., 45 F.3d 1115 (7th Cir.1995). Thus, the court will dismiss a complaint under Rule 12(b)(6) only if "it is clear



that no relief could be granted under any set of facts that could be proved consistent with the allegations." Ledford v. Sullivan, 105 F.3d 354, 357 (7th Cir.1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 78, 104 S.Ct. 2229, 2232 (1984)). The court must accept as true all of the plaintiff's well-pleaded factual allegations, as well as all reasonable inferences. Id. Any ambiguities are construed in favor of the plaintiff. Curtis v. Bembenek, 48 F.3d 281, 283 (7th Cir.1995). The court, however, need "not strain to find inferences favorable to the plaintiff which are not apparent on the face of the complaint." Coates v. Illinois State Bd. of Educ., 559 F.2d 445, 447 (7th Cir.1977).

## II. Background

The following allegations are found in Stokes's amended complaint and the exhibits attached thereto. Stokes sought financing from WSB for the purchase of a condominium. Amend. Compl. ¶ 6. In accordance with its standard policy, WSB offered to lend Stokes up to eighty percent of the appraised value of the residential real property, with additional financing available either through a first mortgage loan or a combination of a first and second mortgage loan on the property. Id. ¶ 7, 10-11.

Because Stokes sought financing for over eighty percent of the value of her condominium, she obtained two loans. WSB and Stokes entered into a first mortgage in the amount of $87,200 ("First Mortgage") and a second mortgage in the amount of $16,350 ("Second Mortgage"). Id. ¶ 8, Exhs. A-D. The two mortgages contained different terms. The First Mortgage is an adjustable rate mortgage with an initial rate of 7.250% and a maximum lifetime interest rate of 11.960%. Id. at Exh. B at 1. It is payable in 610 biweekly payments for a period

of approximately 23 years, with payments scheduled to be completed in June, 2023. Id. at Exh. E. It is subject to a prepayment penalty and, under certain terms and conditions, may be assumed by the purchaser of Stokes's property. Id. at Exh. E. By contrast, the Second Mortgage is payable at a fixed annual rate of 12%. Id. at Exh. A. Unlike the First Mortgage, there is no prepayment penalty. Id. at Exh. A. In addition, no assumption of the Second Mortgage is permitted under any circumstances. Id. at Exh. at A. Stokes signed the notes as well as the mortgages securing the notes for the purchase of her condominium. Id. ¶ 8.

At closing, WSB issued Stokes two separate TILA Disclosure Forms. The disclosure form for the First Mortgage set forth an amount financed of $85,187.71 and an annual percentage rate of 7.349%. Id. at Exh. E. The Disclosure Form for the Second Mortgage recited an amount financed of $15,750 and an annual percentage rate of 12.411%. ¶ 8a, Exh. F. Stokes also received a single form from the U.S. Department of Housing and Urban Development (HUD-1 form), verifying that the disbursement of both loans was for the purpose of acquiring a single piece of residential property. Id. at Exh. G.

### III. Discussion

Stokes challenges WSB's issuance of two separate TILA Disclosure Forms in connection with the financing of a single purchase of residential real estate. Pursuant to TILA and its implementing regulations, Stokes argues, WSB should have issued a single document disclosing a single annual percentage rate, finance charge, and amount financed for the entire transaction, thereby enabling her and other consumers to compare the various terms of credit among competing lenders. Stokes claims that WSB's issuance of multiple disclosure statements violates

TILA provisions requiring conspicuous and accurate disclosure of the terms of credit, 15 U.S.C. § 1632(a), and Regulation Z, 12 C.F.R. § 226.17. Stokes also contends that WSB's conduct violates the provisions set forth in sections 1638(a)(2)-(5) of TILA.

The court finds that Stokes's amended complaint fails to state a claim for which relief may be granted. First of all, WSB's issuance of two separate loans in connection with the financing of a single piece of residential property does not contravene the disclosure requirements set forth in § 1632(a). Section 1632(a) mandates clear and conspicuous disclosure of credit terms. 15 U.S.C. § 1632(a); Brown v. Payday Check Advance, Inc., 202 F.3d 987, 990 (7th Cir.), cert denied, 531 U.S. 820, 121 S. Ct. 61, 148 L.Ed.2d 27 (2000). Stokes, however, does not allege that WSB included extraneous terms in the disclosure form or that the defendant failed to make conspicuous the required terms. See Brown, 202 F.3d at 989-90.

In addition, Stokes's assertion that she was given an inaccurate disclosure is misguided. TILA mandates accurate disclosures of the amount financed, 15 U.S.C. § 1638(a)(2), the finance charge, 15 U.S.C. § 1638(a)(3), the annual percentage rate, 15 U.S.C. § 1638(a)(4), and the total payments, 15 U.S.C. § 1638(a)(5). The loan documents attached to the amended complaint show that the disclosures made by WSB were complete and correct. Stokes does not and cannot dispute the accuracy of the figures provided in the disclosures.

Stokes's theory, however, is that TILA required WSB to issue a single APR and finance charge for the entire transaction so that consumers could compare the terms of credit offered by various lenders. Indeed, TILA and its implementing regulations seek to "allow[ ] consumers to accurately compare credit rates." Williams v. Chartwell Fin. Servs. Ltd., 204 F.3d 748, 757 (7th

-4-

Cir. 2000). See also 15 U.S.C. § 1601(a)[1]. Stokes's argument presupposes that TILA requires that the two loans be presented together under one disclosure form. She fails to cite to any provision in TILA or its implementing regulations, however, that mandates combined disclosures under the present circumstances.[2]

In fact, combining the disparate terms of the two separate loans into one disclosure form would have produced a confusing and inaccurate disclosure of the credit terms. As detailed in the previous section, the First and Second Mortgages obtained by Stokes had different interest rates, payment schedules, and rules concerning prepayment and assignments. Thus, two disclosures were necessary to reflect these and other important differences that distinguished the two loans. Because the terms of the two loans differed, WSB satisfied the requirements set forth in TILA by providing two separate disclosures. See In re Gillespie, 110 B.R. 742, 747-78 (Bankr. E.D. Pa. 1990) (finding TILA violation whether lender collapsed two notes and mortgages into one disclosure form).

Stokes relies on a line of cases discussing loan-splitting in support of her claim, yet the cited cases are inapposite. Loan-splitting occurs when "the debtor wants, requests and expects to get a single loan consummated in a single transaction, but the lender instead documents and makes disclosures for the loans as if it were two separate transactions." Rendler v. Corus Bank,

---

[1] Section 1601(a)(1) of TILA states that the goal of the Act is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C.§ 1601(a).

[2] In fact, the Official Commentary suggests that WSB was authorized to provide two separate TILA disclosure forms for the separate mortgages. See 12 C.F.R. § 226, Supp. 1, Official Comment 17(c)(1)-(16) (stating that "creditors have flexibility in handling credit extensions that may be viewed as multiple transactions").

-5-

96 C 7351, 2001 U.S. Dist. Lexis 3796, at *12 (N.D. Ill. Mar. 29, 2001) (listing loan-splitting cases); MorEquity, Inc. v. Naeem, 118 F. Supp. 2d 885, 894 (N.D. Ill. 2000).

Because there is no allegation that plaintiff requested or expected a single loan, the instant case fails to state a claim for loan-splitting. Stokes admits that she was fully advised that she would be entering into two separate loan transactions. See Amend. Compl. ¶ 7. WSB had a publicly stated policy of issuing separate loans for financing covering over eighty percent of the appraisal value of the property, and Stokes signed two mortgage documents that clearly identified the existence of separate loans.

> Loan splitting focuses on whether the borrower expected to enter into more than one credit transaction, and the failure of the present [plaintiffs] to address the issue of the borrowers' expectations is fatal to a loan splitting claim. None of the loan splitting cases prohibit a lender from issuing more than one loan to finance or refinance a home when the expectations of the borrower are not frustrated.

Rendler, 2001 U.S. Dist. Lexis 3796, at *13. Here, Stokes does not and cannot claim that she expected to enter into a single loan. Thus, to the extent that Stokes advances a loan-splitting claim, it cannot survive this motion to dismiss.

## IV. Conclusion

For the foregoing reasons, World Savings Bank's motion to dismiss Stokes's amended complaint is granted. This case is closed.

**Enter:**

*[signature: David H. Coar]*

**David H. Coar**

**United States District Judge**

Dated: AUG 3 0 2001